## PHILLIPS 66 NATURAL GAS COMPANY, Petitioner,

### v.

## FEDERAL ENERGY REGULATORY COMMISSION, Respondent.

### No. 88–2391.

United States Court of Appeals, Tenth Circuit.

### May 22, 1990.

Luke A. Mickum (John L. Williford and Larry Pain, with him on the briefs), Bartlesville, Okl., for petitioner.

Timm L. Abendroth (Catherine C. Cook, Gen. Counsel, Jerome M. Feit, Sol., and Joanne Leveque, on the brief), F.E.R.C., Washington, D.C., for respondent.

Before McKAY and SETH, Circuit Judges, and CONWAY, District Judge *.

SETH, Circuit Judge.

The action underlying this appeal began in October 1987 when Phillips 66 Natural Gas Company (Phillips) filed an amendment to its blanket affidavit pursuant to 18 C.F.R. § 154.94(k) and 30 rate schedule changes with the Federal Energy Regulatory Commission (Commission). Phillips was seeking to establish its right to collect power and fuel allowances for costs in-

---

* Honorable John E. Conway, United States District Judge for the District of New Mexico, sitting by designation.

curred in the operation of certain compressors, pursuant to Commission Order 473 and 18 C.F.R. § 271.1104(d)(1)(iv)(B), in the rates charged four interstate gas pipelines. [We note that Commission Order 473, issued June 3, 1987, expressly adopted the term "power and fuel allowance" in referring to compression allowances for compressors predating the Natural Gas Policy Act of 1978 (NGPA), 15 U.S.C. § 3301, *et seq.* (1982).] In March 1988 the Director of the Office of Pipeline and Producer Regulation (Director) issued a letter order authorizing collection of the specified production-related costs under 17 of the rate schedule changes; with respect to the remaining 13 rate schedule changes, the Director's letter stated that there was not express contractual authority as required by 18 C.F.R. § 271.1104(c)(4)(ii)(A) to collect the desired power and fuel allowances as production-related expenses. The Director's letter order relied on the fact that during a telephone conversation with Mr. K.R. Lilley of Phillips, a Commission staff member was informed that, with respect to the 13 rate schedules at issue, Phillips was relying on area rate clauses as the authorizing language to collect a compression allowance for the cost of fuel or power to drive the compressors. Noting that § 271.1104(c)(4)(ii)(B) provides that an area rate clause is evidence only of the purchaser's willingness to compensate for delivery costs, and not for compression, the Director conditioned the effectiveness of the 13 rate schedule changes on Phillips filing a protest pursuant to § 271.1104(h)(4)(ii) and being successful in the final ruling.

The Director required Phillips to file protests or refund money already collected because in the interim between Phillips' October 1987 filing and the Director's March 1988 letter order, the Commission had issued Order 473–A. Order 473–A provided, inter alia, for protest procedures so that first sellers of natural gas with pre–NGPA compressors would have an opportunity to make a showing of sufficient contractual authority to collect compression allowances for the cost of power and fuel required to drive the compressors.

The Director's March 1988 letter order further provided that "if Phillips is collecting NGPA compression allowances ... for recent compression facilities, based upon an interpretation that area rate clauses constitute the requisite contract authority, any protest filed pursuant to section 271.-1104(h)(4)(ii) of the regulations should include those rate schedules also." The letter order finally provided that if Phillips is not successful in its protest, or if it does not file a protest, then any monies collected for compression charges, or power and fuel charges, based on area rate clauses should be refunded.

Phillips then filed an appeal to the Commission from the action taken by the Director in the letter order of March 24, 1988. On May 20, 1988, the Commission issued an order denying the appeal from staff action, finding that the conditions imposed by the Director on Phillips' rate schedule change filings were in accordance with relevant regulations and were within the authority delegated to the Director under 18 C.F.R. § 375.307(b). This order further noted that Phillips' complaints were really directed to the regulations and not the Director's action because the Director was merely requiring compliance with the regulations.

On June 20, 1988, Phillips filed for rehearing of the Commission's order of May 20, 1988, and the Commission issued an order denying rehearing on July 20, 1988. This order of the Commission reiterated that Phillips' contentions are directed at the regulations and not the actions of the Director.

In May 1988, Phillips had received an extension of time for filing the ordered protests on the 13 rate schedule changes not approved by the Director, and for all other unnamed contracts under which Phillips may have collected a compression allowance or power and fuel allowance based on an area rate clause. Following the Commission's July 20, 1988 denial of rehearing, Phillips filed the protests and this appeal.

On appeal, Phillips makes several claims of error in challenging the Director's March 1988 letter order. Based on these

alleged errors, Phillips asks this court to reverse both the Commission's order denying Phillips' appeal from staff action and the order denying rehearing thereon.

The dispositive argument made by Phillips in this appeal is the assertion that the Director and the Commission violated the mandate of *Texas Eastern Transmission Corp. v. F.E.R.C.*, 769 F.2d 1053 (5th Cir.), by ruling, in essence, that the area rate clauses were insufficient contractual authorization for collecting compression allowances, or power and fuel allowances. For the reasons that follow, we agree with Phillips.

The Fifth Circuit recognized in *Texas Eastern* the "paramount importance of intent under individual contracts" in determining what production-related costs are recoverable by first sellers of natural gas. *See Texas Eastern*, 769 F.2d at 1065. Subsequently, that court further explained that "[a]fter enactment of the NGPA, ... the Commission opted for a case specific approach of ascertaining the contracting parties' intent, rather than issuing a dispositive ruling that all area rate clauses did or did not authorize the collection of NGPA rates." *Hunt Oil Co. v. F.E.R.C.*, 853 F.2d 1226, 1229 (5th Cir.). "[T]he focal point for the Commission's analysis in determining whether a particular area rate clause authorizes NGPA rates is the contracting parties' intent which is to be ascertained on a case-by-case basis." *Id.* The *Hunt Oil* court also stated that:

"if the contracting parties assert that their mutual intent is to collect the NGPA rates, a rebuttable presumption is created in favor of the contracting parties' interpretation (Order 23 presumption). The third-party protestor then has the burden of coming forward with substantial evidence of lack of contractual authority to overcome the presumption that the contracting parties' assertion regarding their mutual intent is accurate."

*Id.* at 1230.

Here, Phillips has asserted, in essence, that the contracting parties mutually intended for power and fuel allowances to be collected by Phillips pursuant to the area rate clauses contained in the various contracts. Notably, none of the pipelines, as parties to the contracts with Phillips, have asserted otherwise and none have filed protests objecting to Phillips collecting power and fuel allowance pursuant to the area rate clauses in the contracts. This silence reasonably may evince that the pipelines agree with Phillips' claim of contractual authorization and mutual intent. *See generally Hunt Oil*, at 1239. The facts of this case establish that the contracting parties mutually intended that Phillips collect the compression, or power and fuel allowances pursuant to the area rate clauses in question. *See Hunt Oil*, at 1230.

The error committed by the Director, and affirmed by the Commission in this case, arises from the attempt to give substantive effect to § 271.1104(c)(4)(ii)(B). The Director relied on this provision in ruling that the area rate clauses were insufficient to establish contractual authorization to collect the desired compression allowances. The approach taken by the Director here is inconsistent with the principle that it is for the contracting parties, in the first instance, to decide who should bear the various production-related costs. The Supreme Court has stated that "[t]he regulatory system created by the [Natural Gas] Act is premised on contractual agreements voluntarily devised by the regulated companies; it contemplates abrogation of these agreements only in circumstances of unequivocal public necessity." *Permian Basin Area Rate Cases*, 390 U.S. 747, 822, 88 S.Ct. 1344, 1388, 20 L.Ed.2d 312.

This court recently has held that the "bursting bubble" theory of presumptions adopted in *Texas Eastern*, and existing under Commission Orders 473 and 473–A, have only a procedural effect or usage in a protest proceeding; in other words, the presumption that compression allowances are not recoverable pursuant to an area rate clause has no substantive effect outside of protest proceedings. *See Phillips Petroleum Co. v. F.E.R.C.*, 902 F.2d 795 (10th Cir.). In that case, we stated that "[t]he nature of the Orders 473 and 473–A presumptions compel the conclusion that as

with Order 23–B, these presumptions are procedural, and were not intended to operate as an affirmative substantive rule." *Id.* at 801. A procedural use of these presumptions is consistent with *Permian Basin* and *Pennzoil Co. v. F.E.R.C.*, 789 F.2d 1128 (5th Cir.), in that it assures that the decision of who will bear production-related costs will be left initially to the contracting parties. *See id.*

Because the Director and Commission in the present case relied on the presumption of noncollectibility of compression allowances under area rate clauses as a basis for requiring Phillips to file protests, it is clear that substantive effect was erroneously given to the presumption outside of a protest proceeding. *See id.* Accordingly, the result of the proceedings before the Commission is REVERSED and the cause is REMANDED to the Commission for such other proceedings as are necessary in light of this opinion. IT IS SO ORDERED.